# Exhibit A

# HHS/CDC TEMPORARY HALT IN RESIDENTIAL EVICTIONS TO PREVENT THE FURTHER SPREAD OF COVID-19

# FREQUENTLY ASKED QUESTIONS

**Introduction**

This non-binding guidance document shares the views of the Centers for Disease Control and Prevention (CDC), U.S. Department of Health and Human Services (HHS), U.S. Department of Housing and Urban Development (HUD), and U.S. Department of Justice (DOJ) on frequently asked questions about the CDC Order entitled *[Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020)](#)*.  This guidance document does not create or impose any obligations on any member of the public or any entity beyond those established by the Order.  This guidance document is not a comprehensive summary of the duties and obligations under the Order. Individuals should seek the assistance of a legal aid program or private legal counsel (as applicable)[1] for questions relating to the application of the Order to their individual circumstances.

**What does the Order do?**

The Order temporarily halts residential evictions of covered persons for nonpayment of rent during September 4, 2020, through December 31, 2020. This means that a landlord, owner of a residential property, or other person with a legal right to pursue an eviction or a possessory action cannot evict for nonpayment of rent any covered person from any residential property in any U.S. state or U.S. territory where the Order applies. We explain where the Order applies and who is covered later in this document.

**What does CDC mean by "eviction"?**

"Eviction" means any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. State and local laws with respect to tenant-landlord relations vary, as do the eviction processes used to implement those laws.  The judicial process will be carried out according to state and local laws and rules.  Eviction does not include foreclosure on a home mortgage.

As indicated in the Order, courts should take into account the Order's instruction not to evict a covered person from rental properties where the Order applies. The Order is not intended to terminate or suspend the operations of any state or local court. Nor is it intended to prevent landlords from starting eviction proceedings, provided that the actual eviction of a covered person for non-payment of rent does NOT take place during the period of the Order. State and local courts may take judicial notice of the CDC Order, and the associated criminal penalties that may be imposed for non-compliance in making a formal judgment about any pending or future eviction action filed while this Order remains in effect.

---

[1] For more information on legal aid programs, see the following: Legal Services Corporation (https://www.lsc.gov/what-legal-aid/find-legal-aid) and the ACL Elder Care Locator (https://eldercare.acl.gov/Public/Index.aspx).

1

**Who is a "covered person" for purposes of this Order?**

A "covered person" is any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury that:

(1) The individual has used best efforts to obtain all available government assistance for rent or housing;

(2) The individual either (i) expects to earn no more than $99,000 in annual income for Calendar Year 2020 (or no more than $198,000 if filing a joint tax return), (ii) was not required to report any income in 2019 to the U.S. Internal Revenue Service, or (iii) received an Economic Impact Payment (stimulus check) pursuant to Section 2201 of the CARES Act;

(3) The individual is unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses[2];

(4) The individual is using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses; and

(5) Eviction would likely render the individual homeless— or force the individual to move into and live in close quarters in a new congregate or shared living setting—because the individual has no other available housing options.

*Frequently Asked Questions*

**How does someone use this protection?**

A tenant, lessee, or resident of a residential property must provide a completed and signed copy of the declaration, as described above, to their landlord, owner of the residential property where they live, or other person who has a right to have them evicted or removed from where they live. The declaration may be signed and transmitted either electronically or by hard copy. Each adult listed on the lease, rental agreement, or housing contract should complete the declaration. In certain circumstances, such as individuals filing a joint tax return, it may be appropriate for one member of the residence to provide an executed declaration on behalf of other adult residents party to the lease, rental agreement, or housing contract at issue. The declaration can be downloaded here. For more information about the form, see below. **Do not return your completed form to CDC.**

---

[2] An "extraordinary out-of-pocket medical expense" is defined in the Order as any unreimbursed medical expense that is likely to exceed 7.5% of one's adjusted gross income for the year.

2

**Has CDC provided a declaration form that eligible individuals can complete and submit to their landlord?**

Yes. CDC has issued a declaration form that is compliant with the Order. CDC recommends that eligible persons use this declaration form. The declaration form is available on the CDC website: *See* https://www.cdc.gov/coronavirus/2019-ncov/downloads/declaration-form.pdf.

Individuals are not obligated to use the CDC form. Any written document that an eligible individual presents to their landlord will comply with the Order, as long as it contains the same information as the CDC declaration form.

All declarations, regardless of the form used, must be signed, and must include a statement that the covered person understands that they could be liable for perjury for any false or misleading statements or omissions in the declaration.

In addition, people are allowed to use a form translated into other languages. Even though declarations with other languages may satisfy the requirement that a covered person must submit a declaration, CDC cannot guarantee that they in fact do satisfy the requirement. However, declarations in languages other than English are compliant if they contain the information required to be in a declaration, are signed, and include a statement that the covered person understands that they could be liable for perjury for any false or misleading statements or omissions in the declaration.

To seek the protections of the Order, each adult listed on the lease, rental agreement, or housing contract should complete and sign a declaration and provide it to the landlord where they live. Individuals should not submit completed and signed declarations to the CDC or any other federal agency. In certain circumstances, such as individuals filing a joint tax return, it may be appropriate for one member of the residence to provide an executed declaration on behalf of other adult residents party to the lease, rental agreement, or housing contract at issue.

**I have already been evicted. Does this Order apply to me?**

The effective date of the CDC Order is September 4, 2020. That means that any evictions for nonpayment of rent that may have been initiated prior to September 4, 2020, but have yet to be completed, will be subject to the Order. Any tenant who qualifies as a "Covered Person" and is still present in a rental unit is entitled to protections under the Order. Any eviction that occurred prior to September 4, 2020 is not subject to the Order.

**If I am a covered person, do I still owe rent to my landlord?**

Yes. Covered people still owe rent to their landlords. The Order halts residential evictions only temporarily. Covered persons still must fulfill their obligation to pay rent and follow all the other terms of their lease and rules of the place where they live. (See question below regarding evictions for reasons other than paying rent). Covered persons must use best efforts to make timely partial payments that are as close to the full payment as their individual circumstances permit, considering other nondiscretionary expenses. When the Order expires, consistent with the applicable landlord-tenant or real-property laws, a covered person will owe their landlord any unpaid rent and any fees, penalties, or interest as a result of their failure to pay rent or make a timely housing payment during the period of the Order.

**How can CDC help me from being evicted?**

CDC has issued this Order to temporarily halt residential evictions of covered persons for nonpayment of rent from September 4, 2020 through December 31, 2020. CDC is not able to help individual tenants or landlords in eviction actions. Individuals should seek the assistance of a legal aid program or private legal counsel (see footnote #1). Please see question below regarding enforcement of the Order.

**Who do I contact to appeal an eviction decision made against me?**

The Order does not establish an administrative appeal process. Individuals who need legal assistance with appeals for eviction actions taken that they believe are in violation of this Order should consult with a private attorney or legal aid program (see footnote #1).

**Is CDC providing rental assistance?**

No. But information about federal and state assistance programs is described below.

**Where does the Order apply?**

The Order applies only in states (including the District of Columbia), localities, territories, or tribal areas that do not have in place a moratorium on residential evictions that provides the same or greater level of public-health protection than the CDC's Order. Relevant courts deciding these matters should make the decision about whether a state order or legislation provides the same or greater level of public health protection. The Order does not apply in American Samoa, which has reported no cases of COVID-19. Should COVID-19 cases be reported in American Samoa, the Order would then be applicable to American Samoa.

CDC is aware of the following websites for more information on state-by-state eviction moratoriums:
- https://www.nolo.com/legal-encyclopedia/emergency-bans-on-evictions-and-other-tenant-protections-related-to-coronavirus.html
- https://evictionlab.org/covid-policy-scorecard/#scorecard-intro
- https://www.perkinscoie.com/en/news-insights/covid-19-related-eviction-and-foreclosure-ordersguidance-50-state-tracker.html
- https://www.rhls.org/evictionmoratoriums/

CDC is providing these links for your awareness only. CDC has not evaluated and does not endorse these websites.

**Can I still be evicted for reasons other than not paying full rent?**

Yes, you may still be evicted for reasons other than not paying full rent or making a full housing payment. The Order does not prevent you from being evicted for
    (1) engaging in criminal activity while on the premises;
    (2) threatening the health or safety of other residents;
    (3) damaging or posing an immediate and significant risk of damage to property;
    (4) violating any applicable building code, health ordinance, or similar regulation relating to health and safety; or

4

Case 4:20-cv-00784-HFS   Document 32-1   Filed 10/26/20   Page 5 of 8

(5) violating any other contractual obligation of a tenant's lease, other than the timely payment of rent or similar housing-related payment (including nonpayment or late payment of any fees, penalties, or interest).

Individuals who are confirmed to have, have been exposed to, or might have COVID-19 and take reasonable precautions to not spread the disease should not be evicted on the ground that they may pose a health or safety threat to other residents. Individuals who might have COVID-19 are advised to self-isolate except to get medical care. See What to Do If You Are Sick, available at https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html.

You may have additional protections against evictions under laws in your state.

**How can people find government rental assistance?**

The US Department of Housing and Urban Development (HUD) has coronavirus-related resources for renters available on its website.

In addition, there are state and local resources available for renters and landlords. HUD has allocated and made available $4 billion in Emergency Solutions Grants and $5 billion in Community Development Block Grants, including $2 billion in grants focusing on areas with increased eviction risk. State and local authorities are able to use these funds for rental assistance. Tenants and landlords are encouraged to connect with local and state authorities to find out how to access these funds. Contact information for many of these authorities can be found on the HUD website.

HUD has also released guidance on rent repayment plans for tenants and landlords, though that guidance is not specific to requesting protection from eviction under this order.

In addition, the HHS Administration for Children and Families administers the Community Services Block Grant (CSBG) program. The CSBG funds States, territories, tribes, and local nonprofit Community Action Agencies (CAAs) that provide a variety of services for low-income families and individuals. Based on needs identified within the community, CSBG funds flexible support that territories, tribes, CAAs and other eligible entities can use to meet the unique needs of children, youth, and families, including housing-related needs. To access these resources, individuals and families may wish to contact their state and local authorities:

- https://communityactionpartnership.com/find-a-cap/
- https://www.acf.hhs.gov/ocs/resource/state-officials-and-program-contacts

**What types of residential properties are covered by the CDC's order?**

The Order applies to any property leased for residential purposes, including any house, building, mobile home or land in a mobile home park, or similar dwelling leased for residential purposes. The Order does not apply to hotel rooms, motel rooms, or other guest house rented to a temporary guest or seasonal tenant as defined under the laws of the state, territorial, tribal, or local jurisdiction.

5

Case 4:20-cv-00784-HFS   Document 32-1   Filed 10/26/20   Page 6 of 8

**What is CDC's legal authority for issuing this Order?**

CDC issued this Order under the authority of section 361 of the Public Health Service Act (42 U.S.C. § 264) and federal regulations codified at 42 C.F.R. § 70.2. Under 42 U.S.C. § 264, the HHS Secretary is authorized to take measures to prevent the entry and spread of communicable diseases from foreign countries into the United States and between U.S. states and U.S. territories. The authority for carrying out these functions has been delegated to the CDC Director. Under long-standing legal authority found at 42 C.F.R. § 70.2, the CDC Director can take public health measures to prevent the interstate spread of communicable diseases in the event of inadequate local control.

**Why did CDC issue this Order?**

CDC issued this Order because evictions threaten to increase the spread of COVID-19. During a pandemic, calling a temporary halt to evictions can be an effective public health measure to prevent the spread of disease. A temporary halt of evictions can help people who get sick or who are at risk for severe illness from COVID-19 protect themselves and others by staying in one place to quarantine. These orders also allow state and local authorities to more easily implement stay-at-home and social distancing measures to lessen the community spread of COVID-19. Housing stability helps protect public health because homelessness increases the likelihood that people may move into close quarters in homeless shelters or other settings. These crowded places put people at higher risk of getting COVID-19. People who are homeless and not in a shelter also have increased risk of severe illness from COVID-19.

**Do landlords have to make their tenants aware of the CDC order and Declaration?**

No, landlords are not required to make their tenants aware of the Order and Declaration. But landlords must otherwise comply with all requirements of the Order.

**What does it mean when a tenant has declared themselves to be a covered person under the CDC Order?**

Covered persons located in jurisdictions in which this Order applies may not be evicted for non-payment of rent solely on the basis of the failure to pay rent or similar charges at any time during the effective period of the Order. You may continue to charge rent and accept partial payments from your tenant during this time. If local laws permit, you may also agree to a repayment schedule with your tenant for back rent payments that have accumulated during this time. Tenants retain all existing rights and protections against eviction under applicable state law.

**What can a landlord do if a tenant has declared that they are a covered person under the CDC Order, but the landlord dodoes not believe the tenant actually qualifies?**

The Order does not preclude a landlord from challenging the truthfulness of a tenant's declaration in any state or municipal court. The protections of the Order apply to the tenant until the court decides the issue as long as the Order remains in effect.

**If a landlord initiated an eviction for nonpayment of rent before September 4 (the effective date of the CDC Order) but has not completed the eviction, does the CDC Order provide eviction protections for the tenant?**

6

Yes. The effective date of the CDC Order is September 4, 2020. That means that any evictions for nonpayment of rent that may have been initiated before September 4, 2020, and have yet to be completed, will be subject to the Order. Any tenant who qualifies as a "Covered Person" and is still present in a rental unit is entitled to protections under the Order. Any eviction that occurred before September 4, 2020, is not subject to the Order.

**What are the penalties for a landlord, owner of a residential property, or other person with a legal right to pursue an eviction or a possessory action violating this Order?**

Several laws ( 18 U.S.C. §§ 3559 and 3571, 42 U.S.C. § 271, and 42 C.F.R. § 70.18) say that a person who violates the Order may be subject to a fine of no more than $100,000 or one year in jail, or both, if the violation does not result in death. A person violating the Order may be subject to a fine of no more than $250,000 or one year in jail, or both, if the violation results in a death or as otherwise provided by law. An organization violating the Order may be subject to a fine of no more than $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death or as otherwise provided by law. These are criminal penalties and are determined by a court of law. CDC has no involvement in these penalties.

**What if individuals act in bad faith when completing and submitting the declaration?**

Anyone who falsely claims to be a covered person under this Order by attesting to any material information which they do not believe to be true may be subject to criminal penalties under 18 U.S.C. § 1621 (perjury) or other applicable criminal law.

**How does the federal government intend to enforce this Order?**

The U.S. Department of Justice prosecutes violations of this Order.