# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| KC TENANTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-000784-CV-W-HFS |
| | ) | |
| DAVID M. BYRN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Judge David Byrn and Court Administrator Mary
Marquez oppose Plaintiff's Motion for Preliminary Injunction (Doc. 25) and
set forth the following suggestions in opposition thereto.

Case 4:20-cv-00784-HFS   Document 43   Filed 10/30/20   Page 1 of 24

# TABLE OF CONTENTS

I.  INTRODUCTION......................................................................... 5

II. STATEMENT OF FACTS ......................................................... 6

III. STANDARD OF REVIEW.............................................. 12, 13

IV. ARGUMENT ........................................................................... 13

   A.     Because Plaintiff has brought claims against judicial officers in their official capacity seeking to direct the operations of a state court, Plaintiff is not entitled to any type of injunctive relief...... 13

   B.     Plaintiff has failed to meet any of the elements required for the issuance of a preliminary injunction. .......................................... 14

     1.  Likelihood of success on the merits............................................ 14

     2.  The remaining factors weigh against granting a preliminary injunction. ........................................................................... 21

V.  CONCLUSION....................................................................... 23

Case 4:20-cv-00784-HFS   Document 43   Filed 10/30/20   Page 2 of 24

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*1-800-411-Pain Referral Service, LLC v. Otto*,
  744 F.3d 1045 (8th Cir. 2014)...................................................................... 23

*Comprehensive Health of Planned Parenthood Great Plains v. Williams*,
  322 F. Supp. 3d 921 (W.D. Mo. 2018) .......................................................... 15

*Dataphase Sys., Inc., v. C L Sys.*, Inc.,
  640 F.2d 109 (8th Cir. 1981)................................................................. 12, 22

*Devose v. Herrington*,
  42 F.3d 470 (8th Cir. 1994)........................................................................ 12

*Forrester v. Bass*,
  397 F.3d 1047 (8th Cir. 2005).................................................................... 21

*Gelco Corp. v. Coniston Partners*,
  811 F.2d 414 (8th Cir. 1987)...................................................................... 12

*Goss v. Lopez*,
  419 U.S. 565 (1975) .................................................................................. 21

*Hafer v. Melo*,
  502 U.S. 21 (1991) .................................................................................... 14

*Hamilton v. City of Hayti, Missouri*,
  948 F.3d 921 (8th Cir. 2020)...................................................................... 14

*Iverson v. United States*,
  973 F.3d 843 (8th Cir. 2020)...................................................................... 16

*King v. Burwell*,
  576 U.S. 473 (2015) .................................................................................... 6

*Marbury v. Madison*,
  1 Cranch 137, 2 L.Ed. 60 (1803)................................................................... 6

Case 4:20-cv-00784-HFS   Document 43   Filed 10/30/20   Page 3 of 24

*Maryland v. King,*

    567 U.S. 1301 (2012) ................................................................................ 23

*Nken v. Holder,*

    556 U.S. 418 (2009) .................................................................................. 23

*Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott,*

    734 F.3d 406 (5th Cir. 2013) .................................................................... 23

*Rogers v. Scurr,*

    676 F.2d 1211 (8th Cir. 1982) .................................................................. 12

*Schenck Process LLC v. Zeppelin Sys. USA, Inc.,*

    2018 WL 4279223 (W.D. Mo. June 25, 2018) ........................................ 13

*United States v. Salerno,*

    481 U.S. 739 (1987) .................................................................................. 23

*Watkins Inc. v. Lewis,*

    346 F.3d 841 (8th Cir. 2003) .................................................................... 12

## STATUTES

Section 441.233 RSMo (2016) ...................................................................... 16

## REGULATIONS

85 Fed. Reg. 55292 ....................................................................................... 16

## I.   INTRODUCTION

Plaintiff is requesting this Court to issue an order directing the Circuit Court of Jackson County to stop doing its core function—impartially adjudicating disputes under the law. In support of this request, Plaintiff sets forth four principal claims. First, Plaintiff argues that CDC's Moratorium flatly prevents the Circuit Court from taking any action in eviction proceedings for the nonpayment of rent. Second, Plaintiff argues that the Moratorium prevents the Circuit Court from holding hearings concerning the veracity of tenant declarations filed under the Moratorium. Third, Plaintiff argues that Moratorium prevents the Circuit Court from providing a process for confirming whether a landlord has received a declaration from a tenant. Fourth, Plaintiff claims the Circuit Court is requiring tenants to submit declarations in a manner that violates the Moratorium.

In the following suggestions, Defendants will explain why these claims are factually and legally wrong, focusing on the principal problem with Plaintiff's claims, which is that the CDC Moratorium simply does not prohibit the actions Plaintiff claims it does as evidenced by the plain language of the Moratorium and the CDC's Statement of Interest. *See* Doc. 32.

Case 4:20-cv-00784-HFS   Document 43   Filed 10/30/20   Page 5 of 24

But, even more fundamentally, Plaintiff's claims are misguided because they are an attempt to subvert the proper role of the judiciary within our constitutional structure. No one is unsympathetic to the problems everyone is dealing with due to COVID-19, including tenants who are struggling to pay their bills. But what Plaintiff is asking for from the Circuit Court, and by extension this Court in bringing this action, is to ignore the law and stop exercising its core judicial function in eviction proceedings. This is a request Defendants are obligated to reject. *See King v. Burwell*, 576 U.S. 473, 498 (2015) ("In a democracy, the power to make the law rests with those chosen by the people. Our role is more confined—"to say what the law is.") (quoting *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)). For these reasons, Plaintiff's request for preliminary injunctive relief must be denied.

## II.    STATEMENT OF FACTS

In support of its motion for preliminary injunction, Plaintiff sets forth various factual assertions. The assertions are irrelevant as this case may be resolved solely on a review of the two orders at issue, which will be discussed below. However, Plaintiff's factual assertions paint a skewed picture of the situation. For this reason, Defendants submit the following in response.

First, Plaintiff claims "Defendants have filed new eviction actions for

nonpayment of rent, held eviction proceedings, and issued final eviction judgments without any meaningful inquiry into whether a tenant submitted a Declaration under the Moratorium." Plaintiff's Memorandum in Support of Plaintiff's Motion for Preliminary Injunction ("Plaintiff's Motion"), pp. 5-6.

It is true that the Circuit Court is allowing eviction proceedings to be initiated. But it is not true that the Circuit Court is not conducting a meaningful inquiry into whether a tenant has submitted a CDC Declaration. The Circuit Court has established a verification system to determine whether a tenant has submitted a CDC Declaration. The verification system ensures compliance with CDC's Moratorium by requiring landlords—in any existing, pending, previously filed or newly filed writ of execution seeking to remove a tenant from a residential home for the nonpayment of rent—to file a verification with the court, under penalty of perjury, verifying that the landlord has either (1) not been provided a declaration from the person they are seeking to evict or (2) that they are seeking to evict the person on grounds not precluded by the CDC Moratorium. *See* Administrative Order; Mary Marquez Decl. (Ex. 1).

The verification must contain a certification under penalty of perjury that the landlord has provided a copy of the verification to the person against whom eviction is sought. *See* Administrative Order. The verification

Case 4:20-cv-00784-HFS    Document 43    Filed 10/30/20    Page 7 of 24

must include a notification informing tenants of their right to challenge the accuracy or veracity of the statements in the verification by requesting an evidentiary hearing within seven days of receiving the verification. *Id.*

However, the seven day timeframe does not bar a tenant from filing a request for evidentiary hearing at any time before the writ of execution is issued. Mary Marquez Decl. (Ex. 1). Likewise, the seven day timeframe does not bar a tenant from providing a declaration to their landlord at any time before the writ of execution is issued, in which case no writ shall be issued. *Id.* In fact, Civil Process Deputies have been given the following instructions:

> When the deputies arrive at the premises of the eviction, the deputies have been instructed to make contact with the tenant if they are on the premises and inquire as to whether the tenant has provided a declaration or objection to the landlord, or filed one with the Court. The deputies are then to take the following actions:
>
> a. If tenant does not produce an Objection or a Declaration, or claim to have filed one or sent one to the landlord, Civil Process may proceed with the eviction;
>
> b. If tenant produces an Objection, or claims to have filed one, Civil Process should not proceed with the eviction;
>
> c. If tenant produces a Declaration, OR claims to have filed one or sent one to the Landlord, AND Box 1 of the Verification was checked, Civil Process should not proceed with the eviction; and
>
> d. If tenant produces a Declaration, OR claims to have filed one or sent one to the Landlord, BUT any of Boxes 2-6 of the Verification were checked and Box 1 is not checked, Civil Process may proceed with the eviction."

Mary Marquez Decl. (Ex. 1).

"Civil Process deputies have been instructed that if they are to err, the preference is to err on the side of not evicting a tenant and to bring matters back to be presented to the assigned judge for further instruction." *Id.* In addition, the Circuit Court has made available the declaration forms on its website and in courtrooms during landlord-tenant dockets. *Id.*

Next, Plaintiff asserts that "Defendants have accepted 364 filings for new eviction actions for nonpayment of rent since September 4, 2020. *See* Plaintiff's Motion, p. 6. Then, Plaintiff asserts that "landlords have demanded evidentiary hearings to challenge tenants' Declarations in nearly every pending eviction case before the Jackson County Circuit Court." *Id.* This implies that the Circuit Court is holding hearings on challenges to declarations in nearly all 364 cases.

While it is true that the Circuit Court is allowing landlords to request evidentiary hearings to challenge the accuracy or truthfulness of statements made in declarations provided by tenants, evidentiary hearings are not being set in nearly every case as Plaintiff suggests. Five associate circuit court judges in Jackson County hear landlord-tenant cases. Mary Marquez Decl. (Ex. 1). Before these five judges, only a few evidentiary hearings challenging a declaration have taken place or are currently scheduled to take place, and the Circuit Court has not invalidated a single declaration. *See* Judge Sarah A. Castle Decl. (Ex. 2); Judge Mary Weir Decl. (Ex. 3);

Judge Kyndra Stockdale Decl. (Ex. 4); Judge Jessica Agnelly Decl. (Ex. 5);

Judge Janette Rodecap Decl. (Ex. 6). In addition, as of the date of this filing,

"no writs of execution have been issued and executed in any case where a

CDC declaration has been filed and the tenant is being evicted for non-

payment of rent." Mary Marquez Decl. (Ex. 1).

Plaintiff also claims that the Administrative Order requires tenants

to submit the CDC Declaration as issued in the CDC Moratorium and

precludes the use of similar declaration as authorized by the CDC

Moratorium. *See* Plaintiff's Motion, p. 8–9. This is not true. Tenants are not

required to use any particular form of declaration and the Circuit Court will

accept any declaration filed by a tenant, no matter the form. *See* Mary

Marquez Decl. (Ex. 1) ("Administrative Order 2020-154 does not require a

tenant to utilize any specific form of declaration. The CDC did issue a form

declaration that tenants can submit, and the Court has made that form

declaration available on its website and in courtrooms during landlord-

tenant dockets. However, tenants are not required to use any particular

form of declaration and the Court will accept any declaration filed by a

tenant, no matter the form.").

In addition, Plaintiff relies on declarations for support of the factual

assertions. The declarations paint a skewed picture as well. Plaintiff relies

upon the declaration of attorney, Gina Chiala, executed on October 25,

2020, where Ms. Chiala claims that "[e]very single tenant declaration that we have filed has been met with a challenge, a request for evidentiary hearing, and in most cases, invasive demands for payroll and bank account records dating back six months." Plaintiff's Motion, Ex. A, ¶ 27. From a review of the Circuit Court's docket, the Court was able to identify 20 active rent and possession cases within the relevant time period in which Ms. Chiala has entered her appearance for the defendant. *See* Mary Marquez Decl. (Ex. 1). "On review of these 20 cases, only five contain a filing in which a plaintiff has challenged the veracity or validity of a defendant's CDC declaration. Of these, four have been stayed until January 2021. The other has been scheduled for trial on November 5, 2020. Eight of the cases have a CDC declaration on file but there has been no challenge to the veracity of the declaration or request for hearing or discovery. All eight of those cases have been stayed or continued until January 2021 or do not have any further proceedings scheduled at this time. The remaining seven cases have no CDC declaration on file and there has been no challenge or other action regarding a declaration in the case." *See* Mary Marquez Decl. (Ex. 1).

Plaintiff also relies on three declarations from tenants. None of the tenants are currently facing an eviction action in the Circuit Court. *See* Mary Marquez Decl. (Ex. 1). Only one tenant ever faced an eviction action, and on the date her declaration was filed with this Court, she was no longer

facing the action because the landlord voluntarily dismissed the case, a fact not mentioned in Plaintiff's motion or the tenant's declaration. *Compare id. with* Plaintiff's Motion, Ex. E.

## III.  STANDARD OF REVIEW

Any form of preliminary injunctive relief is an "extraordinary remedy." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). The party seeking injunctive relief bears the burden of proving that it should be granted. *Id.* (citing *Gelco Corp. v. Coniston Partners*, 811 F.2d 414 (8th Cir. 1987)). Such interim relief is intended to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc., v. C L Sys.*, Inc., 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc)). Injunctive relief "may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982).

"The Eighth Circuit enumerated four factors a district court must consider when deciding whether to grant or deny a motion for temporary restraining order or motion for preliminary injunction: '(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the

harm to other interested parties if the relief is granted; and (4) the effect on the public interest.'" *Schenck Process LLC v. Zeppelin Sys. USA, Inc.*, 2018 WL 4279223, at *1 (W.D. Mo. June 25, 2018) (citing *Dataphase*, 640 F.2d at 112)).

## IV.   ARGUMENT

Before addressing the four traditional preliminary injunction factors, Defendants will address whether Plaintiff is entitled to any type of injunctive relief since its claims are against judicial officers. After addressing this issue, Defendants will address the four factors.

### A.   <u>Because Plaintiff has brought claims against judicial officers in their official capacity seeking to direct the operations of a state court, Plaintiff is not entitled to any type of injunctive relief.</u>

Apparently recognizing the problems with its claims for injunctive relief, in its motion for preliminary injunction, Plaintiff attempts to limit its request for injunctive relief to Defendant Mary Marquez, the Court Administrator. *See* Plaintiff's Motion, pp. 39–41. This does not fix the flaw with Plaintiff's request.

Plaintiff's challenge is to an Administrative Order issued by the Circuit Court of Jackson County concerning the procedures in eviction proceedings, and Plaintiff is seeking to prevent Defendant Mary Marquez from following the procedures set forth by the Circuit Court. Plaintiff

Case 4:20-cv-00784-HFS   Document 43   Filed 10/30/20   Page 13 of 24

cannot bring this claim for injunctive relief against any of the defendants, including Mary Marquez. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 928 (8th Cir. 2020) ("For court clerks, absolute immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules."); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official.").

For this reason alone, Plaintiff's motion for preliminary injunctive relief should be denied.

### B. <u>Plaintiff has failed to meet any of the elements required for the issuance of a preliminary injunction.</u>

#### 1. Likelihood of success on the merits

Plaintiff's motion for injunctive relief should be denied because they have failed to show a likelihood of success on the merits. "While no single factor is determinative . . . the Eighth Circuit has consistently held that likelihood of success on the merits is the most important factor" when considering whether to grant preliminary injunctive relief. *Comprehensive Health of Planned Parenthood Great Plains v. Williams*, 322 F. Supp. 3d 921, 928 (W.D. Mo. 2018). Satisfying this factor requires plaintiffs to demonstrate they have "a fair chance of prevailing" on the merits. *Id.* For the reasons discussed below, Plaintiff does not have a fair chance of

prevailing on the merits.

### i.    Standing

Plaintiff cites a number of cases out of context in an attempt to argue they have standing to challenge the Administrative Order. *See* Plaintiff's Motion, pp. 14–17. As described in detail in Defendants' Brief and Suggestions in Support of Motion to Dismiss (Doc. 30), incorporated by reference herein, Plaintiff lacks standing, which is detrimental to Plaintiff's motion for injunctive relief.

### ii.    Supremacy Clause Claim

Plaintiff's Supremacy Clause challenge rests entirely upon four false premises.

False premise one: Plaintiff argues that the Administrative Order conflicts with the CDC Moratorium by allowing the filing of new eviction actions, eviction proceedings, and the issuance of eviction judgments notwithstanding a tenant' submission of the declaration form. Plaintiff's Motion, pp. 21–22. According to Plaintiff, this directly conflicts with the CDC Moratorium, which expressly and unequivocally prohibits *any* eviction action if a tenant has submitted a declaration. Plaintiff's Motion, p. 21.

In making this argument, Plaintiff relies on the CDC Moratorium's definition of evict/eviction which is "any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or

a possessory action, to remove or cause the removal of a covered person from a residential property." 85 Fed. Reg. 55292. Plaintiff relies heavily on the word "any" yet ignores the rest of the definition, which is necessary to put things in context. *See Iverson v. United States*, 973 F.3d 843, 847–48 (8th Cir. 2020) (". . . when interpreting the statute, we consider the whole statutory text.") (internal citations and quotations omitted).

Eviction, as defined by CDC's Moratorium, is "any action . . . to remove or cause the removal of a covered person from a residential property." 85 Fed. Reg. 55292. Missouri law expressly forbids any form of self-help eviction. *See* Section 441.233 RSMO (2016). Landlords must take a tenant through housing court to reclaim possession of their premises. In fact, "a landlord or its agent who removes or excludes a tenant or the tenant's personal property from the premises without judicial process and court order, or causes such removal or exclusion, or causes the removal of the doors or locks to such premises, shall be deemed guilty of forcible entry and detainer[.]" *Id.*

If one reads the CDC's definition of evict/eviction as a whole, it prevents any action to remove or cause the removal of a covered person from a residential property, which in the state of Missouri equates to the prevention of the issuance of a writ of execution on the eviction judgment. Indeed, CDC's Frequently Asked Questions, issued on October 9, 2020,

confirms this interpretation as does CDC's Statement of Interest filed in this case. *See* FREQUENTLY ASKED QUESTIONS, *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/eviction-moratoria-order-faqs.pdf (last visited October 26, 2020); Statement of Interest of the United States of America (Doc. 32). CDC's Moratorium does not prevent a landlord from commencing a state court eviction proceeding, and Plaintiff's assertion that it does is simply incorrect.

False premise number two: Plaintiff argues the Administrative Order conflicts with the CDC Moratorium by allowing landlords to request evidentiary hearings to challenge the accuracy or truthfulness of statements made in their tenant's declarations. Plaintiff's Motion, p. 21–22. Plaintiff refers to these as "eviction-plus" hearings. *Id.* Plaintiff's argument is based entirely on a misreading of the CDC's Moratorium. Particularly, Plaintiff claims that the CDC Moratorium immunizes tenants from being subject to any stage of an eviction for nonpayment of rent if they have submitted a declaration to their landlord. Plaintiff's Motion, pp. 13, 18, 21–22. However, if the CDC Moratorium was meant to immunize tenants from being subject to any stage of an eviction for nonpayment of rent once they have submitted a declaration to their landlord then the CDC Moratorium would have said as much. It doesn't. Courts should not read words into regulations where the agency has chosen not to include them. CDC's Frequently Asked

Questions, issued on October 9, 2020 as well as CDC's Statement of Interest filed in this case confirms that the CDC Moratorium does not preclude a landlord from challenging the truthfulness of a tenant's declaration in any state or municipal court. *See* FREQUENTLY ASKED QUESTIONS, *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/eviction-moratoria-order-faqs.pdf (last visited October 26, 2020); Statement of Interest of the United States of America (Doc. 32).

False premise number three: Plaintiff apparently takes issue with the Administrative Order's enforcement mechanism, which ensures compliance with CDC's Moratorium by requiring landlords—in any existing, pending, previously filed or newly filed writ of execution seeking to remove a tenant from a residential home for the nonpayment of rent—to file a verification with the court, under penalty of perjury, verifying that the landlord has either (1) not been provided a declaration from the person they are seeking to evict or (2) that they are seeking to evict the person on grounds not precluded by the CDC Moratorium. *See* Administrative Order. The verification must contain a certification under penalty of perjury that the landlord has provided a copy of the verification to the person against whom eviction is sought. *Id.* The verification must include a notification informing tenants of their right to challenge the accuracy or veracity of the statements in the verification by requesting an evidentiary hearing within seven days

of receiving the verification. *Id.* However, the seven day timeframe does not bar a tenant from filing a request for evidentiary hearing at any time before the writ of execution is issued. *Id.*; *see also* Mary Marquez Decl. (Ex. 1). Likewise, the seven day timeframe does not bar a tenant from providing a declaration to their landlord at any time before the writ of execution is issued, in which case no writ shall be issued. *See* Mary Marquez Decl. (Ex. 1).

Other than asserting that CDC's Moratorium immunizes tenants from eviction proceedings, Plaintiff fails to explain how the procedures laid out in the Administrative Order directly conflict with the CDC Moratorium, which by its own language does not prevent evictions of persons who do not qualify as "covered persons," or evictions based on circumstances other than nonpayment of rent. 85 Fed. Reg. 55293–55294. In order to comply with the CDC Moratorium, Defendants' had to use discretion in implementing a system that is capable of tracking and enforcing those covered by the CDC Moratorium and those not.

False premise number four: Plaintiff incorrectly alleges that the Administrative Order requires tenants to submit the CDC-issued Declaration form and does not afford tenants the flexibility to submit declarations similar to the CDC-issued declaration as contemplated in the CDC Moratorium. Plaintiff's Motion, pp. 8, 14, 29. The Administrative

Order expressly acknowledges that the CDC Moratorium "contains an Attachment A, which is a Declaration Form . . . for use by tenants, lessees, or residents of residential properties according to the provisions of the CDC Order; and . . . Covered Persons must provide an executed copy of the Declaration Form (or similar declaration) under penalty of perjury to their landlord[.]" Administrative Order. Moreover, Defendant Mary Marquez, Court Administrator for the Sixteenth Judicial Circuit Court of Jackson County, Missouri, has attested that the Administrative Order does not require a tenant to utilize any specific form of declaration and the Court will accept any declaration filed by a tenant, no matter the form. *See* Mary Marquez Decl. (Ex. 1).

Simply put, there is no conflict between the CDC Moratorium and the Administrative Order and as a result, Plaintiff is unlikely to succeed on the merits.

### iii.    Procedural Due Process Claim

Plaintiff's Complaint alleges that CDC's Moratorium affords it and its member a *state-created liberty interest* that extends when the tenant has submitted a declaration under penalty of perjury claiming protection under CDC's moratorium. *See* Complaint (Doc. 1). Now, however, Plaintiff changes its allegations and asserts that CDC's Moratorium affords it and its members a *property interest*. Plaintiff's Motion, pp. 28–38. A state-created

Case 4:20-cv-00784-HFS   Document 43   Filed 10/30/20   Page 20 of 24

liberty interest is not the same as a property interest. In fact, they are two separate and distinct interests that involve different analysis and legal application. *See Forrester v. Bass*, 397 F.3d 1047, 1055 (8th Cir. 2005) (describing a property interest as an interest "a person has already acquired in specific benefits" whereas "[a] state-created liberty interest arises when a state imposes 'substantive limitations on official discretion.'"); *see also Goss v. Lopez*, 419 U.S. 565, 574–76 (1975) (distinguishing deprivations of liberty and property interests). Plaintiff's change of course not only undermines its argument and further supports Defendant's motion to dismiss, but also precludes this Court from granting any relief upon a claim not plead and asserted in the Complaint.

For these reasons, this Court should not consider Plaintiff's argument as it relates to a purported property interest and for the reasons discussed in Defendants' Brief and Suggestions in Support of Motion to Dismiss (Doc. 30), incorporated by reference herein, neither the CDC Moratorium nor the Administrative Order creates a constitutionally protected liberty interest.

## 2. The remaining factors weigh against granting a preliminary injunction.

The remaining factors a district court must consider when deciding whether to grant or deny a motion for preliminary injunction include: "(2) whether the moving party will suffer irreparable injury absent the

injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest.'" *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc). All these factors weigh against Plaintiffs' request for relief.

First, Plaintiff cannot demonstrate a threat of irreparable harm that would justify a preliminary injunction. An injunction against enforcing the challenged Administrative Order will have no meaningful effect because with or without the Administrative Order, tenants in eviction proceedings will still be subject to the various actions Plaintiff claims the tenants should not be subject to. Landlords will still be permitted to pursue the very actions Plaintiff claims are prohibited because CDC's Moratorium authorizes those actions. *See* CDC Moratorium; FREQUENTLY ASKED QUESTIONS, *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/eviction-moratoria-order-faqs.pdf (last visited October 26, 2020); Statement of Interest of the United States of America (Doc. 32).

Second, if this Court were to do what Plaintiff is asking, which is to halt all stages of eviction proceedings in Jackson County, Missouri, that would cause per se irreparable harm to Defendants because it forces the Circuit Court to ignore the law and stop exercising its core judicial function in effectuating statutes enacted by representatives related to eviction proceedings. "Any time a State is enjoined by a court from effectuating

statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see also 1-800-411-Pain Referral Service, LLC v. Otto*, 744 F.3d 1045, 1053-54 (8th Cir. 2014) (holding that "a more rigorous threshold showing than th[e] ordinary preliminary injunction test" applies when the injunction impedes state law); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").

Third, the public interest strongly disfavors injunctive relief. Injunctive relief frustrates Missouri's legitimate and compelling interest to enforce its laws, as well as its compelling interest in administering its own system of justice. *See United States v. Salerno*, 481 U.S. 739, 749 (1987). When the State is a party, its interest and harm merges with that of the public. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest supports continued enforcement of the Administrative Order until this Court has an opportunity to rule on the merits.

## V.   CONCLUSION

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

ERIC S. SCHMITT
Attorney General

*/s/ D. Ryan Taylor*
D.RYAN TAYLOR
Assistant Attorney General
Missouri Bar No. 63284
Fletcher Daniels State
Office Building
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Phone: (816) 889-5008
Fax: (573) 751-4323
ryan.taylor@ago.mo.gov

*/s/ Amanda R. Langenheim*
Amanda R. Langenheim
Assistant Attorney General
Missouri Bar No. 69642
Fletcher Daniels State
Office Building
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Phone: (816) 889-5013
Fax: (573) 751-4323
amanda.langenheim@ago.mo.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 30, 2020, a true and accurate copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all entered parties.

*/s/ D. Ryan Taylor*
Assistant Attorney General